UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| SAVE THE SOUND, INC. | : | CIVIL ACTION NO. |
| | : | 3:21-cv-01649-JCH |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| TOWN OF RIDGEFIELD | : | |
| | : | September 14, 2022 |
| Defendant | : | |
| | : | |

---

**CONSENT DECREE**

Plaintiff Save the Sound, Inc. ("Save the Sound") and Defendant Town of Ridgefield ("Ridgefield") (collectively, the "Parties") hereby enter into this Consent Decree in settlement of this action.

WHEREAS, Save the Sound commenced this action asserting, inter alia, claims that Ridgefield was out of compliance with certain provisions of the Clean Water Act (33 U.S.C. § 1365 et seq.) ("CWA");

WHEREAS, Ridgefield is a person under Section 502(5) of the CWA, 33 U.S.C. § 1362(5);

WHEREAS, Section 402(p)(2) of the CWA authorizes States to issue general permits to regulate municipal separate storm sewer systems ("MS4");

WHEREAS, Ridgefield is the owner and operator of an MS4;

WHEREAS, Ridgefield's MS4 conveys stormwater and various pollutants into Ridgefield's waterbodies;

WHEREAS, the Norwalk River, Ridgefield Brook, Cooper Pond Brook, and Mamanasco Lake have been declared as impaired waterbodies pursuant to Section 303(d) of the CWA, 33 U.S.C. § 1313(d);

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Ridgefield of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:

### I. JURISDICTION AND VENUE

1. **Jurisdiction.** Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question), and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). Plaintiff has standing and has complied with the statutory notice requirements under the CWA, 33 U.S.C. § 1365(b)(1), and the corresponding regulations at 40 C.F.R. § 135.2. An actual, justiciable controversy exists between the Parties. The requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. § 1365(a).

2. **Venue.** Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because Ridgefield is located, and the events giving rise to this action occurred, within this judicial district.

3. **Consent.** For purposes of this Order, or any action to enforce the Order, Ridgefield consents to the Court's jurisdiction over this Order. For purposes of this Order, Ridgefield consents to venue in this judicial district.

### II. APPLICABILITY

4. The provisions of this Order shall apply to and be binding upon Save the Sound and Ridgefield and their successors, and assigns.

5. Ridgefield shall provide a copy of this Order to all officers, directors, employees, and agents whose duties might reasonably include compliance with any provisions of the Order.

### III. OBJECTIVES

6. It is the express purpose of the Parties in entering into the Order to require Ridgefield to take all measures necessary to fulfill the objectives of the CWA, the requirements of the General Permit, and any applicable federal or state regulations, and to reduce or eliminate Ridgefield's contributions to stormwater pollution.

### IV. DEFINITIONS

7. Unless otherwise expressly provided herein, terms used in this Order which are defined in the CWA or in regulations promulgated under the CWA shall have the meaning ascribed to them in the CWA or in the regulations promulgated thereunder. Whenever the terms listed below are used in this Order, the following definitions shall apply:

   a. "The Agencies" shall mean the United States Environmental Protection
      Agency and the United States Department of Justice.

   b. Date of Lodging: the day the Plaintiff submits this Order to the Agencies
      for the forty-five (45) day review period required by 33 U.S.C. §
      1365(c)(3).

   c. Effective Date: the day the Court enters this Order after the expiration of
      the forty-five (45) day review period required by 33 U.S.C. § 1365(c)(3).

   d. Term of this Order: the period beginning on the Effective Date and ending
      five years from the Effective Date, which is the "Termination Date."

   e. Work Period: the period from the Effective Date until June 30, 2025 (the
      "Work End Date"). During the Work Period, Ridgefield intends to
      complete the compliance measures identified in Section VII and Appendix
      A.

## V. PAYMENTS

8. **Environmental Benefit Payment.** Within thirty (30) days of the Effective Date
   of this Order, Ridgefield shall pay Seventy-Thousand dollars ($70,000) in the
   form of a check to Norwalk River Watershed Association ("NRWA") all of
   which shall be used on the design and implementation of a rain garden to
   detain stormwater runoff from parking lots proximate to Yanity Gym or on
   one or more green stormwater infrastructure projects in Ridgefield deemed by
   the NRWA to be priority projects for the reduction, mitigation, and/or
   remediation of pollution or the effects of pollution in the Long Island Sound
   and its tributary waters. Ridgefield shall notify Save the Sound in writing
   concurrently when the payment is made and provide a copy of the check.  The
   Parties recognize that Ridgefield will maintain its authority to review such
   project to determine that such project complies with all applicable local
   zoning and regulatory requirements.

9. **Fees, Costs, and Expenses.** Ridgefield shall pay a sum of Seventeen-Thousand
   dollars ($17,000) as full and complete satisfaction of Plaintiff's claims for
   attorneys' fees and costs incurred to date, including investigative and expert costs,
   against Ridgefield. The payment will be provided to Save the Sound within thirty
   (30) days after the Effective Date of this Order. The check shall be payable to
   Save the Sound.

## VI. FEDERAL REVIEW OF ORDER

10. **Review by Agencies.** The Parties recognize that, pursuant to 33 U.S.C. §
    1365(c)(3), this Order cannot be entered until forty-five (45) days after the receipt
    of a copy of the proposed Order by the Agencies. Therefore, upon signing of this

Order by the Parties, the Plaintiff shall serve copies of this Order upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5. If for any reason the United States should decline to approve this Order in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Order raised by the United States.

11. **Entry of Order.** Upon the expiration of the forty-five day review period provided by 33 U.S.C. § 1365(c)(3), the Parties shall move the Court for entry of this Order. This Order shall take effect on the date it is entered by this Court and shall terminate five years from the Effective Date, as described in Paragraph 7(c) and (d). If for any reason the Court should decline to approve this Order in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Order.

## VII.  COMPLIANCE MEASURES

12. Ridgefield shall complete all Compliance Measures set forth in Appendix A, which is fully incorporated into this Consent Order, no later than the dates specified within Appendix A.

## VIII.  REPORTING

13. On or before February 15 of each year during the Term of this Order, Ridgefield shall publish on its website and submit to Plaintiff a draft annual report, pursuant to Section 6(a)(2)(A) (page 21) of the General Permit. Ridgefield shall provide contact information to accept comments upon the draft annual report.

14. On or before April 1 of each year during the Term of this Order, Ridgefield shall publish on its website and shall submit to Plaintiff and CT DEEP a final annual report, pursuant to Section 6(j)(2) (page 45) of the General Permit.

15. On or before February 15, 2023, July 15, 2023, February 15, 2024 and July 15, 2025, Ridgefield shall submit to Plaintiff a report which includes status updates of the Compliance Measures described in Appendix A, including the date upon which each Compliance Measure was completed and documentation thereof.

16. For each day Ridgefield fails to timely perform any Compliance Measure set forth in Appendix A, Ridgefield shall pay a stipulated Environmental Benefit Payment (EBP) for a third party and project to be agreed to by the parties pursuant to the following schedule:

| Period of Noncompliance | EBP Per Compliance Measure Per Day |
|---|---|
| 1-30 Days | $100 |

| | |
|---|---|
| 31-45 Days | $300 |
| 46-60 Days | $500 |
| More than 60 Days | $2,000 |

Ridgefield shall have a 15 Day period to cure any untimely Compliance Measure. No EBP is required if the Compliance Measure is completed within fifteen (15) Days of the deadline. However, if a cure is not effected within fifteen days, an EBP penalty may, at the sole discretion of Plaintiff be assessed as per the above schedule, beginning from the original deadline.

## IX. INFORMATION COLLECTION AND RETENTION

17. Ridgefield shall retain all non-identical copies of all documents, records, and other information (including documents, records, or other information in electronic form) generated by Ridgefield, and all data collected and all reports generated by Ridgefield's contractors (including data and reports in electronic form), that relate in any manner to Ridgefield's performance of its obligations under this Order for five years. This information retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the Plaintiff, Ridgefield shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

## X. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

18. This Order resolves the civil claims of Plaintiff for the violations alleged in their Complaint filed in this action through the Date of Lodging.

19. Ridgefield is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits, and Ridgefield's compliance with this Order shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Plaintiff does not, by its consent to the entry of this Order, warrant or aver in any manner that Ridgefield's compliance with any aspect of this Order will result in compliance with provisions of the CWA or with any other provisions of federal, state, or local laws, regulations, or permits.

20. This Order does not limit any rights or remedies available to the Plaintiff or defenses available to Ridgefield for any violation by Ridgefield of the CWA, state law, or associated regulations or permit conditions other than those claims alleged in the Complaint through the Date of Lodging.

21. This Order does not limit any rights or remedies available to the United States or the State.

22. The Plaintiff expressly reserves all rights and remedies, legal and equitable, available to it for all violations of the CWA, state law, or other applicable law, except with respect to violation that have been specifically resolved pursuant to Paragraph 18, and reserve all rights and remedies, legal and equitable, available to enforce the provisions of this Order, including the provisions of any Appendix or Compliance Measure approved by Plaintiff under this Order.

23. In any subsequent administrative or judicial proceeding initiated by the Plaintiff for injunctive relief, civil penalties, or other appropriate relief relating to Ridgefield's violations of federal or state law, Ridgefield shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the Plaintiff in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 18.

24. This Order does not limit or affect the rights of Ridgefield or the Plaintiff against any third parties not party to this Order, nor does it limit the rights of third parties not party to this Order against Ridgefield, except as otherwise provided by law.

25. This Order shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Order.

## XI. NOTICES

26. Any notice, demand, copies of documents and other communications required to be made under the provisions of this Order (collectively, "Notices") by any Party hereto shall be effective only if in writing and (a) personally served, (b) mailed by United States registered or certified mail, return receipt requested, postage prepaid, (c) sent by a nationally recognized courier service (i.e., Federal Express) to be confirmed in writing by such courier, or (d) sent by electronic mail, with receipt confirmed by the counterparty via electronic mail. Notice shall be directed to the Parties at their respective addresses set forth below.

    Notices for Plaintiff shall be sent to:

    Roger Reynolds
    Save the Sound
    900 Chapel St., Upper Mezzanine
    New Haven, CT 06510
    rreynolds@savethesound.org

    Notices sent to the individuals listed above at the addresses listed above shall be deemed as notice to Plaintiff.

Notice for Ridgefield shall be sent to:

Monte E. Frank
Pullman & Comley
850 Main Street
Bridgeport, CT 06601
mfrank@pullcom.com

Notices sent to the individual listed above at the address listed above shall be deemed as notice to Ridgefield.

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

## XII.   EFFECTIVE DATE

27. Under Section 505(c)(3) of the Clean Water Act, Plaintiff will provide a copy of this Order to the United States Environmental Protection Agency ("EPA") and the United States Department of Justice ("DOJ"), and the Court may not enter the Order prior to forty-five (45) days from the date the Order is received by EPA and DOJ. 33 U.S.C. § 1365(c)(3). In the event EPA or DOJ comments raise concerns on the provisions of this Order during the review period, the Parties agree to meet and confer to attempt to resolve any issue(s) raised by EPA or DOJ. At the end of the forty-five (45) day review period, or after receipt of comments from EPA or DOJ, whichever occurs first, the Parties will jointly notify the Court of any comments received from EPA or DOJ, any resolution of those comments, and move the Court to enter the Order. The Order becomes effective on the date signed and issued by the Court.

## XIII.   RETENTION OF JURISDICTION

28. The Court shall retain jurisdiction to enforce the terms of this Order and its Appendix until the Termination Date and to resolve disputes that are not resolved through the dispute resolution process prescribed above that may arise between the Parties.

## XIV.   FINAL COMPLIANCE AND TERMINATION

29. This Order shall terminate five years from the Effective Date. Except that, if Defendant does not comply with its obligations under this Order by the dates set forth, then the term of this Order – and the Court's jurisdiction – shall be extended for an appropriate period of time.

## XV.   MISCELLANEOUS

7

30. **Entire Agreement.** This Order and its Appendix contain the entire agreement between the Parties and no major modifications shall be valid unless in writing, mutually agreed to and executed by the Parties, and entered by the Court; except that the Parties may mutually agree in writing to minor modifications of this Order without further consent of the Court and such written minor modifications shall be deemed incorporated into this Order.

31. **Representatives.** Each undersigned representative of Ridgefield and Plaintiff certifies that he or she is fully authorized to enter into the terms and conditions of the Order and to execute and legally bind the Party he or she represents to this document.

32. **Execution in Counterparts.** This Order may be signed in counterparts, and its validity shall not be challenged on that basis.

33. **Headings.** The section and paragraph headings contained in this Order are for reference purposes only and shall not affect in any way the meaning or interpretation of this Order.

34. **Severability.** In the event that any of the provisions of this Order are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

35. **Interpretation.** The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Order, but shall be construed as if all Parties prepared this Order, and any rules of construction to the contrary are hereby specifically waived. The terms of this Order were negotiated at arm's length by the Parties hereto. The language in all parts of this order shall be construed according to its plain and ordinary meaning, except as to those terms defined by the Clean Water Act or specifically herein.

## XVI. FINAL JUDGMENT

36. Entry of this Order constitutes Final Judgment under Rule 54 of the Federal Rules of Civil Procedure.

## XVII. APPENDIX

37. The following appendix is hereby incorporated into this Order.

Appendix A – Compliance Measures

Judgment is hereby entered in accordance with the foregoing Consent Decree this __22nd__ day of __December__, 2022.

>                    /s/ Janet C. Hall
>     _____
>             UNITED STATES DISTRICT JUDGE

The following Parties hereby consent to the entry of this Consent Decree:

For Plaintiff Save the Sound

By: _____    September 16, 2022
    Christopher P. Kelly                 DATE
    Peter B. Cooper Legal Fellow
    Save the Sound
    900 Chapel Street, Suite 2202
    New Haven, CT 06510
    Federal Bar #ct31247


By: _____/s/ Roger F. Reynolds_____    September 16, 2022
    Roger Reynolds                       DATE
    Senior Legal Counsel
    Save the Sound
    900 Chapel Street, Suite 2202
    New Haven, CT 06510
    Federal Bar #ct18126

ITS ATTORNEYS


For Defendant Town of Ridgefield, Connecticut

By: _____    September 15, 2022
    Monte E. Frank                       DATE
    Pullman & Comley, LLC
    90 State House Square
    Hartford, CT 06103
    Federal Bar #ct13666

ITS ATTORNEY

**APPENDIX A – COMPLIANCE MEASURES**

1. **Develop Written Illicit Discharge Detection and Elimination (IDDE) Program.** On or before thirty (30) days from the Effective Date, Ridgefield shall adopt a written IDDE program in accordance with Section 6(a)(3) of the General Permit (page 22).

2. **Determine Baseline Directly Connected Impervious Area (DCIA).** On or before thirty (30) days from the Effective Date, Ridgefield shall use mapping provided by the Commissioner of the Department of Energy and Environmental Protection, or other equivalent source, to calculate the DCIA that contributes stormwater runoff to each of its MS4 outfalls, in accordance with Section 6(a)(5)(C) of the General Permit (page 30). The DCIA calculation shall be based upon the criteria available through the DEEP stormwater webpage (www.ct.gov/deep/municipalstormwater) and the precise methodology and assumptions shall be described in Ridgefield's subsequent annual report. Ridgefield shall revise its DCIA estimate as development, redevelopment, or retrofit projects effectively add or remove DCIA to its MS4.

3. **Notify Developers of DEEP Construction General Permit.** On or before thirty (30) days from the Effective Date, Ridgefield shall develop and implement a procedure for notifying developers and contractors, when working within or for Ridgefield, of their potential obligation to obtain authorization under DEEP's General Permit for the Discharge of Stormwater and Dewatering Wastewaters Associated with Construction Activities ("construction general permit") if their development or redevelopment project disturbs one or more acres of land, either individually or collectively, as part of a larger common plan, and results in a point source discharge to the surface waters of the State directly or through the permittee's MS4, in accordance with Section 6(a)(4)(E) of the General Permit (page 26). The notification shall include a provision informing the developer/contractor of their obligation to provide a copy of the Storm Water Pollution Control Plan (required by the construction general permit) to Ridgefield upon request.

4. **Maintain Inventory of Known Sanitary Sewer Overflows (SSO).** On or before thirty (30) days from the Effective Date, Ridgefield shall create and continue to maintain and update an inventory of all known SSOs that have discharged to the MS4 within the previous five years, in accordance with Section A(4) of Appendix B of the General Permit (Appendix B page 2). This shall include SSOs resulting, during dry or wet weather, from inadequate conveyance capacities, or where interconnectivity of the storm and sanitary sewer infrastructure allows for communication of flow between the systems. The information provided in the inventory shall include:

    a. Location (approximate street crossing/address and receiving water, if any);

    b. A clear statement of whether the discharge entered a surface water directly or entered the MS4;

      c. Date(s) and time(s) of each known SSO occurrence (i.e., beginning and end of any known discharge);

      d. Estimated volume(s) of the occurrence;

      e. Description of the occurrence indicating known or suspected cause(s);

      f. Mitigation and corrective measures completed with dates implemented; and

      g. Mitigation and corrective measures planned with implementation schedules.

      h. This inventory shall be included in each subsequent report.

5. **Update and Implement Public Education and Outreach Program.** On or before thirty (30) days from the Effective Date, Ridgefield shall implement a public education program to distribute educational materials or conduct equivalent outreach activities about the sources and impacts of stormwater discharges on waterbodies and the steps that the public can take to reduce pollutants in stormwater runoff, in accordance with Section 6(a)(1) (page 19) of the General Permit. The education program shall include, but not be limited to: information on management of pet waste, application of fertilizers herbicides, and pesticides, impervious cover and impacts of illicit discharges, and improper disposal of waste into the MS4. The form and content of the education program will be dependent on the audience and identified areas of concern for each MS4. Ridgefield may join other permittees in the same region to develop and implement a public education program. Educational information may be developed and/or acquired from other permittees, governmental agencies, community and nongovernmental organizations, councils of government, academia, and/or environmental advocacy organizations. Information may be disseminated with flyers, brochures, door hangers, television public service announcements, and/or web-based tools. Each subsequent report shall summarize the types, sources, number of, and methods by which materials disseminated.

      a. Ridgefield shall consult Section 6(a)(1)(C) of the General Permit and tailor its educational materials to the Stormwater Pollutants of Concern identified for Ridgefield's impaired waterbodies.

6. **Interdepartmental Coordination Plan.** On or before thirty (30) days from the Effective Date, Ridgefield shall implement a plan outlining how all municipal departments and boards with jurisdiction over the review, permitting, or approval of land disturbance and development projects within the MS4 will coordinate their functions with one another, in accordance with Section 6(a)(4)(B) (page 26) of the General Permit.

7. **Site Plan Review for Stormwater Practices.** On or before thirty (30) days from the Effective Date, Ridgefield shall implement a process to conduct site plan reviews that incorporate consideration of stormwater controls or management practices to prevent or minimize impacts to water quality, in accordance with Section 6(a)(4)(C)(i) (page 26) of the General Permit.

8. **Citizen Reporting Program.** On or before thirty (30) days from the Effective Date, Ridgefield shall develop a program for citizen reporting of illicit discharges, in accordance with Section 6(a)(3)(A)(iii) (page 22) of the General Permit. This may include maintaining a website, email list or mailing program that provides clear instructions for the public describing how citizens can submit an illicit discharge report. The reporting program shall provide an email address and/or a phone number or other means for submissions. Ridgefield shall affirmatively investigate and eliminate any illicit discharges reported to it by any citizen or organization, provided that such report incorporates at least a time and location of an observed discharge. Ridgefield shall commence inspection of such a reported outfall or manhole promptly after receiving such a report, and incorporate those reported outfalls into its IDDE program. All citizen reports and the responses to those reports shall be included in subsequent report.

9. **Record Illicit Discharge Abatement Activities.** On or before thirty (30) days from the Effective Date, Ridgefield shall create and continue to maintain a record of all illicit discharge abatement activities, in accordance with Section 6(a)(3)(A)(v) (page 23) of the General Permit. This record shall include, at a minimum: location (identified with an address or latitude and longitude); description; date(s) of inspection; sampling data (if applicable); action(s) taken; date of removal or repair; and responsible party(ies). This record shall be included in each subsequent report.

10. **MS4 Property Operations and Maintenance.** On or before thirty (30) days from the Effective Date, Ridgefield shall adopt best practices for the operation and maintenance of municipally-owned and operated properties and facilities, in accordance with Section 6(a)(6)(C) (page 33) of the General Permit. This shall include best practices for: parks and open space; pet waste management; waterfowl management; buildings and facilities; vehicles and equipment; and leaf management.

11. **Log Catch Basin Inspections and Cleanings.** On or before thirty (30) days from the Effective Date, Ridgefield shall develop and maintain a record of all catch basin cleanings and inspections, including the total number of catch basins in the municipality, the number inspected, the number cleaned, the total volume or mass of material removed from all catch basins, and, if practicable, the volume or mass of material removed from each catch basin draining to water quality limited waters, in accordance with Section 6(a)(6)(D)(ii)(g) (page 37) of the General Permit. This record shall be included in each subsequent report.

12. **Develop and Implement Deicing Material Standard Operating Procedures.** On or before thirty (30) days from the Effective Date, Ridgefield shall develop and implement standard operating practices for the use, handling, storage, application, and disposal of deicing products such as salt and sand to minimize exposure to stormwater, in accordance with Section 6(a)(6)(E)(i) (page 37) of the General Permit. Ridgefield shall consider means to minimize the use and optimize the application of chloride-based or other salts or deicing product (while maintaining public safety) and consider opportunities for use of alternative materials. For any exterior containers of liquid deicing materials installed after

13

the effective date of this permit, Ridgefield shall provide secondary containment of at least 110% of the largest container or 10% of the total volume of all containers, whichever is larger, without overflow from the containment area.

13. **Implement Snow and Ice Standard Operating Procedures.** On or before thirty (30) days from the Effective Date, Ridgefield shall, in accordance with Section 6(a)(6)(E)(ii) (page 37) of the General Permit: implement and refine its standard operating practices regarding its snow and ice control to minimize the discharge of sand, anti-icing or de-icing chemicals and other pollutants (while maintaining public safety); establish goals for the optimization of sand and/or chemical application rates through the use, where practicable, of automated application equipment (e.g. zero-velocity spreaders), anti-icing and pre-wetting techniques, implementation of pavement management systems, and alternate chemicals; maintain records of the application of sand, anti-icing and/or de-icing chemicals to document the reduction of chemicals to meet established goals; ensure the proper training for deicing applications for municipal employees, institutional staff, or private contractors on lands and easements for which it is responsible for maintenance; and manage and dispose of snow accumulations in accordance with DEEP's Best Management Practices for Disposal of Snow Accumulations from Roadways and Parking Lots. In its Annual Report, Ridgefield shall document results of its snow removal program including, at a minimum: the type of staff training conducted on application methods and equipment, type(s) of deicing materials used; lane-miles treated; total amount of each deicing material used; type(s) of deicing equipment used; any changes in deicing practices (and the reasons for the change); and snow disposal methods.

14. **Establish Catch Basin Inspection and Cleaning Schedule.** On or before thirty (30) days from the Effective Date, Ridgefield shall establish a schedule for routine cleaning of catch basins in accordance with Section 6(a)(6)(D)(ii) (page 36) of the General Permit. The schedule shall prioritize inspection and maintenance for Ridgefield-owned catch basins located near impaired waters and construction activities (roadway construction, residential, commercial, or industrial development or redevelopment) and the frequency of routine cleaning will ensure that no catch basin at any time will be more than fifty (50) percent full. Ridgefield shall document in its subsequent report its plan for optimizing catch basin cleaning, inspection plans, or its schedule for gathering information to develop the optimization plan; documentation shall include metrics and other information used to reach the determination that the established plan for cleaning and maintenance is optimal for the MS4.

15. **Maintenance Plan for Stormwater Ponds and Treatment Structures.** On or before thirty (30) days from the Effective Date, Ridgefield shall develop and implement a maintenance plan for ensuring the long-term effectiveness of retention or detention ponds and stormwater treatment structures or measures located in the Urbanized Area and those catchment areas of the MS4 with either DCIA of greater than 11% or which discharge to impaired waters and which discharge to, or receive stormwater from, its MS4, in accordance with Section 6(a)(5)(D) (page 30) of the General Permit. The plan shall, at a minimum, require all such ponds and structures to be inspected annually and cleaned when accumulated sediment is found to be in excess of 50% design capacity.

16. **Retrofit Plan.** On or before thirty (30) days from the Effective Date, Ridgefield shall develop a retrofit plan to disconnect existing DCIA, in accordance with Section 6(a)(6)(B)(ii)(b) (page 32) of the General Permit. The plan shall identify and prioritize sites that may be suitable for retrofit and identify the prioritized projects which Ridgefield shall use to meet its retrofit requirement in Paragraph 24, *infra*. In its subsequent Annual Report, Ridgefield shall report on its identification and prioritization process, the selection of the projects to be implemented, the rationale for the selection of those projects and the total DCIA to be disconnected upon implementation of the projects.

17. **Track DCIA.** On or before December 31, 2022, Ridgefield shall implement a process to revise its DCIA estimate as development, redevelopment, or retrofit projects effectively add or remove DCIA to its MS4, in accordance with Section 6(a)(5)(C) of the General Permit (page 30).

18. **Map All MS4 Outfalls.** On or before December 31, 2022, Ridgefield shall develop a list and a map showing all stormwater discharges from a pipe or conduit located within and owned or operated by the municipality and all interconnections with other MS4s, in accordance with Section 6(a)(3)(C) (page 23) of the General Permit. The map should be developed in a GIS format.

    The map shall include for each discharge:

    a. Type, material, size, and location (identified with a latitude and longitude) of conveyance, outfall or channelized flow (e.g. 24" concrete pipe);

    b. The name, water body ID and Surface Water Quality Classification of the immediate surface waterbody or wetland to which the stormwater runoff discharges;

    c. If the outfall does not discharge directly to a named waterbody, the name and water body ID of the nearest named waterbody to which the outfall eventually discharges;

    d. The name of the watershed, including the subregional drainage basin number (available from CT ECO at www.cteco.uconn.edu) in which the discharge is located; and

    e. The list should, if possible, be prepared in a format compatible with Microsoft Excel.

19. **Review Regulations for Low Impact Development Barriers.** On or before December 31, 2022, Ridgefield shall identify and, where appropriate, reduce or eliminate existing local regulatory barriers to implementing LID and runoff reduction practices to the MEP, in accordance with Section 6(a)(5)(A)(i) (page 27) of the General Permit. These may

15

include site planning requirements, zoning regulations, street design regulations, or infrastructure specifications that address minimal dimensional criteria for the creation of roadways, parking lots, and other DCIA.

Ridgefield shall consider the following watershed protection elements to manage the impacts of stormwater on receiving waters:

   a. Minimize the amount of impervious surfaces (roads, parking lots, roofs, etc.) within the municipality by minimizing the creation, extension, and widening of parking lots, roads, and associated development and encourage the use of Low Impact Development or green infrastructure practices;

   b. Preserve, protect, create and restore ecologically sensitive areas that provide water quality benefits and serve critical watershed functions. These areas may include, but are not limited to, riparian corridors, headwaters, floodplains and wetlands;

   c. Implement stormwater management practices that prevent or reduce thermal impacts to streams, including requiring vegetated buffers along waterways, and disconnecting discharges to surface waters from impervious surfaces such as parking lots;

   d. Seek to avoid or prevent hydromodification of streams and other water bodies caused by development, including roads, highways, and bridges;

   e. Implement standards to protect trees, and other vegetation with important evapotranspirative qualities; and

   f. Implement policies to protect native soils, prevent topsoil stripping, and prevent compaction of soils.

20. **Establish IDDE Legal Authority.** On or before April 1, 2023, Ridgefield shall establish the necessary and enforceable legal authority by statute, ordinance, rules and regulations, permit, easement, contract, order or any other means, to eliminate illicit discharges, in accordance with Section 6(a)(3)(B) (page 23) of the General Permit.

    The legal authority shall:

    a. prohibit illicit discharges to the storm sewer system and require removal of such discharges consistent with the IDDE program;

    b. control the discharge of spills and prohibit the dumping or disposal of materials including, but not limited to, residential, industrial and commercial wastes, trash, used motor vehicle fluids, pesticides, fertilizers, food preparation waste, leaf litter, grass clippings, and animal wastes into the MS4;

16

    c. authorize fines or penalties and/or recoup costs incurred by the permittee from anyone creating an illicit discharge or spilling or dumping; and

    d. provide any additional legal authorities specified in Section (A)(7)(a) of Appendix B of the General Permit.

21. **Detailed MS4 Mapping.** On or before June 30, 2023, Ridgefield shall update its MS4 map, required by Paragraph 18, *supra*, in accordance with Section A(6) of Appendix B (Appendix B page 3) of the General Permit.

    The updated map shall include:

    a. The municipal separate storm sewer system, including: outfalls and receiving waters (required by previous permit); pipes; open channel conveyances (swales, ditches, etc.); catch basins; manholes; interconnections with other MS4s and other storm sewer systems; municipally-owned stormwater treatment structures (e.g. detention and retention basins, infiltration systems, bioretention areas, water quality swales, gross particle separators, oil/water separators, or other proprietary systems);

    b. Catchment delineations for use in catchment priority rankings or prioritizing BMP retrofits;

    c. Waterbodies identified by name and indication of all use impairments as identified on the most recent Integrated Water Quality Report pursuant to Clean Water Act section 303(d) and 305(b);

    d. Any applicable municipal sanitary sewer system or municipal combined sewer system;

    e. Storm sewer material, size, and age;

    f. Sanitary sewer system material, size, and age;

    g. Where a municipal sanitary sewer system exists, properties known or suspected to be served by a septic system, especially in high-density urban areas;

    h. Area where the permittee's MS4 has received or could receive flow from septic system discharges (e.g. areas with poor soils, or high ground water elevations unsuitable for conventional subsurface disposal systems);

    i. Seasonal high water table elevations impacting sanitary alignments;

    j. Topography;

  k. Orthophotography;

  l. Alignments, dates and representation of work completed (with legend) of past illicit discharge investigations (e.g. flow isolation, dye testing, CCTV); and

  m. Locations of suspected, confirmed and corrected illicit discharges (with dates and flow estimates).

22. **Monitor 6 "Worst" Outfalls to Impaired Waters Annually.** On or before August 31, 2023, Ridgefield shall utilize outfall screening results to select six (6) of the highest contributors of any of the pollutants of concern, in accordance with Section 6(i)(1)(D)(iii) (page 43) of the General Permit. These six outfalls shall be sampled annually for the appropriate pollutant of concern. If more than one pollutant of concern is identified for any monitored outfall (i.e. more than one impairment), all of these pollutants shall be monitored.

23. **Inspect All Catch Basins in Priority Areas.** On or before September 30, 2023, Ridgefield shall inspect all catch basins within the priority areas, in accordance with Section 6(a)(6)(D)(ii)(a) (page 36) of the General Permit. The catch basins shall be cleaned, as necessary, and the inspections will be logged and reported in the subsequent Annual Report.

24. **Implement Projects from Retrofit Plan.** On or before December 31, 2023, Ridgefield shall implement projects from its retrofit plan such that it achieves a two percent (2%) reduction in DCIA, in accordance with Section 6(a)(6)(B)(ii)(c) (page 33) of the General Permit.

25. **Complete Dry Weather Sampling.** On or before thirty (30) days from the Effective Date, Ridgefield shall conduct dry weather screening and sampling of approximately one-third of Ridgefield's outfalls and interconnections, in accordance with Section A(8)(a) of Appendix B (Appendix B page 12) of the General Permit. On or before September 30, 2023, Ridgefield shall conduct dry weather screening and sampling of an additional one-third of Ridgefield's outfalls and interconnections. On or before September 30, 2024, Ridgefield shall conduct dry weather screening and sampling of the final one-third of Ridgefield's outfalls and interconnections. Screening and sampling shall follow the procedures dictated in Section A(7)(d) of Appendix B (Appendix B page 7) of the General Permit. All data shall be reported in subsequent reports.

26. **Screen All Outfalls to Impaired Waters.** On or before thirty (30) days from the Effective Date, Ridgefield shall screen approximately one-third of Ridgefield's outfalls to impaired waters for the applicable pollutants of concern, in accordance with Section 6(i)(1) (page 41) of the General Permit. On or before September 30, 2023, Ridgefield shall screen an additional one-third of Ridgefield's outfalls to impaired waters. On or before September 30, 2024, Ridgefield shall screen the final one-third of Ridgefield's outfalls to impaired waters. Screening shall follow the procedures dictated in Section 6(i)(1)(A-C) (page 41) of the General Permit, and follow-up investigations will be

conducted as required by Section 6(i)(1)(D) (page 43).

27. **Inspect All Catch Basins Outside Priority Areas.** On or before June 30, 2023, Ridgefield shall inspect approximately one-third of the catch basins outside of the priority areas, in accordance with Section 6(a)(6)(D)(ii)(a) (page 36) of the General Permit. On or before June 30, 2024, Ridgefield shall inspect an additional one-third of the catch basins outside of the priority areas. On or before June 30, 2025, Ridgefield shall inspect the final one-third of the catch basins outside of the priority areas. The catch basins shall be cleaned, as necessary, and the inspections will be logged and reported in the subsequent Annual Report.